NOV 20 2026 PM3:51
FILED - USDC - BPT - CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ABRAHAM ROSENWALD,<br>Plaintiff,<br><br>v.<br><br>STATE OF CONNECTICUT JUDICIAL BRANCH; and<br>JOAN K. ALEXANDER, in her official capacity as Chief Court Administrator of the Connecticut Judicial Branch,<br>Defendants. | Civil Action No. ____________<br><br>November 20, 2026 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Abraham Rosenwald ("Mr. Rosenwald"), appearing without counsel, alleges:

### I. NATURE OF THE ACTION

1. Mr. Rosenwald represents himself in an action for dissolution of marriage pending in the Connecticut Superior Court ("the dissolution action"). The Connecticut Judicial Branch's own ADA office has determined that he is a qualified individual under the Americans with Disabilities Act. An order in the dissolution action provides that he "must first be granted leave" before he may file "a motion, request, application or notice." On November 17, 2026, a sworn request for leave and a proposed request for accommodation were presented for filing at the clerk's office in that action. The proposed request asks the Superior Court to authorize an assistive aid in the courtroom. As to use of the aid in the courthouse outside the courtroom, it asks the court, if that part is not within the court's authority, "to name the office that decides it, so that I may present it there." The clerk's office returned the papers on a form titled Return of Papers, dated the same day (¶ 33). The form states no ruling and does not say who decides any part of the request.

2. The Judicial Branch offers accommodations of two kinds: those its staff decide and those a judge decides (¶ 19). On November 9, 2026, Mr. Rosenwald asked the Branch's

Centralized ADA Office in writing how its published procedure operates for him while the order is in force. The answer of November 10, 2026 states that the office "follows" the Branch's procedure, that "the provisions of a Judge's order ... will always prevail," and that Mr. Rosenwald may use the Branch's form for "an administrative accommodation" (¶ 27). It does not say to whom a request that a judge must decide is to be presented, or by what steps. A status conference in the dissolution action is set for December 8, 2026. A trial management conference and the trial follow (¶ 36).

3. This action asks for administrative steps only: that the Branch's administrative offices receive the proposed request for accommodation, to the extent they have not already done so, record its receipt, review it, decide in writing what court staff decide, and say in writing how the rest is to be presented. It asks for review of no ruling. The Superior Court keeps its control of leave to file, of its conferences and its trial, of whether the aid may be used, and of every other question in the dissolution action.

4. This is an action for prospective declaratory and injunctive relief under Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12133, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Mr. Rosenwald seeks no damages.

5. Mr. Rosenwald asks that the Judicial Branch and its Chief Court Administrator be directed to take the administrative steps stated in prayer (b) and (c). That relief rests on federal law. Mr. Rosenwald does not ask that any paper be entered on the docket of the dissolution action or treated as filed in it; that this Court decide whether the papers described in ¶ 33 were properly returned; that leave of court be granted or dispensed with; that any accommodation be granted; that any judge act in a judicial capacity, or do so within any time; or that this Court review, stay, modify, construe or set aside any order of any Connecticut court. Nor does he ask this Court to excuse compliance with any such order or to direct how any judge shall rule on any matter. The orders described below are pleaded as facts.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)-(4). Declaratory and further relief is authorized by 28 U.S.C. §§ 2201(a) and 2202.

7. Venue is proper under 28 U.S.C. § 1391(b)(2). The events occurred in Connecticut, at the Superior Court in Stamford and at the Judicial Branch's Centralized ADA Office in Hartford.

8. Title II is a valid exercise of the power of Congress under § 5 of the Fourteenth Amendment "as it applies to the class of cases implicating the fundamental right of access to the courts." *Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004). This action concerns Mr. Rosenwald's access to judicial services in his own pending case: the means by which a party with a disability obtains modifications in the conferences and the trial ahead (¶¶ 36, 39). As to Section 504, Congress has provided that "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973." 42 U.S.C. § 2000d-7(a)(1). Prospective relief against the Chief Court Administrator in her official capacity is independently available under *Ex parte Young*, 209 U.S. 123, 159-60 (1908).

9. The memorandum of decision of September 16, 2026 (¶ 22) is the subject of Mr. Rosenwald's pending appeal in the Connecticut Appellate Court. This action seeks no review or rejection of that decision or of any other order of a state court (¶ 5). *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005); *T. M. v. University of Maryland Medical System Corp.*, 608 U.S. 668, 672, 688 (2026) (holding that the *Rooker-Feldman* doctrine applies even when the state-court judgment remains subject to further review in the state courts, and leaving it "narrowly confined to" cases of the kind described in *Exxon*); *id.* at 687 n.10 (describing a separate federal discrimination suit that, "though it involved the same parties and facts," "did not implicate *Rooker-Feldman*" because it "did not seek review and rejection of the consent order").

10. The injunctive relief sought is the administrative acts and written statements set out in prayer (b) and (c). It would not stay or enjoin the dissolution action or any order entered in it, is directed to no judge who presides in that action, and calls for no continuing federal supervision of any state court. *See Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 73, 78 (2013) (abstention under *Younger* is confined to three "exceptional" categories of state proceedings); *O'Shea v. Littleton*, 414 U.S. 488, 500-01 (1974) (disapproving injunctive relief that "would require for its enforcement the continuous supervision by the federal court" over the conduct of state judicial officers).

11. Reservation of rights. Mr. Rosenwald reserves all rights under the First, Fifth and Fourteenth Amendments to the United States Constitution, including the right of access to the courts and the right to petition, and under article first, §§ 1, 8, 10 and 20 of the Connecticut Constitution. He reserves every claim and objection he has raised or may raise in any state court, including in any appeal now pending. Nothing in this Complaint waives any of them, and nothing in it is an admission as to any of them. Each count names the federal provision on which it rests.

## III. PARTIES

12. Mr. Rosenwald is an adult. He is the defendant in the dissolution action, which is pending in the Superior Court, Judicial District of Stamford-Norwalk at Stamford. He appears there without counsel.

13. Defendant Judicial Branch is the Judicial Department of the State. By statute the Judicial Department "shall consist of the Supreme Court, the Appellate Court, the Superior Court, the Office of the Chief Court Administrator and their employees and divisions," together with the courts of probate and the Public Defender Services Commission, and, "[f]or the purposes of the general statutes, 'Judicial Branch' means the Judicial Department." Conn. Gen. Stat. § 51-1a(a). It is a public entity within 42 U.S.C. § 12131(1). It operates the Centralized ADA Office.

14. Defendant Joan K. Alexander is the Chief Court Administrator of the Judicial Branch ("the Chief Court Administrator"). By statute the Chief Court Administrator is "the administrative director of the Judicial Department" and is "responsible for the efficient operation of the department." Conn. Gen. Stat. § 51-5a(a)(1). The staff of her office, "[u]nder the supervision and direction of the Chief Court Administrator," is to "[e]xamine the administrative methods and systems employed in the Judicial Department and its constituent courts and agencies" and to "develop and implement programs for the improvement thereof and for securing uniform administration and procedures." Conn. Gen. Stat. § 51-9(6). She is a judicial officer. She is sued in her official capacity only, and only as to the administration of the Judicial Branch. No relief is sought as to any act taken in a judicial capacity.

## IV. FACTS

### A. The Branch's own office has determined that Mr. Rosenwald is a qualified individual

15. Mr. Rosenwald is a person with a disability. As three orders described in ¶ 16 record (Entry Nos. 161.01, 171.01 and 306.01), the Judicial Branch's Centralized ADA Office has determined that he "is a qualified individual under the ADA," and in each of those orders the Superior Court found the accommodation then requested "directly related to" his disability. Two of those three orders denied the request then before the court. In the alternative, by that determination and those findings the Judicial Branch has itself classified Mr. Rosenwald as an individual with a disability, and he has "a record of such an impairment" within 42 U.S.C. § 12102(1)(B). *See* 28 C.F.R. § 35.108(e)(1), (e)(3). In the orders quoted in this Complaint, "the defendant," "the respondent" and "the movant" are Mr. Rosenwald, and "the plaintiff" is the other party to the dissolution action.

16. By order of April 29, 2026 in the dissolution action (Entry No. 161.01), the Superior Court recorded that "the Judicial Branch's Centralized ADA Office has determined that the respondent is a qualified individual under the ADA," found Mr. Rosenwald's request

that a remote status conference be held in person "directly related to the movant's disability," and converted that one conference to an in-person proceeding. On April 30, 2026, a request for accommodation by Mr. Rosenwald was entered on the docket of the dissolution action (Entry No. 171.00), and that day the Centralized ADA Office wrote to Mr. Rosenwald: "The attached ADA request for accommodation was forwarded to me in the Centralized ADA Office for review." By orders of May 1, 2026 (Entry No. 171.01) and July 21, 2026 (Entry No. 306.01), the court recorded the same determination, made the same finding, and denied the requests then before it. In the order of July 21, 2026 the court stated: "Repeated requests for the same relief, absent a change in circumstances, is improper." Mr. Rosenwald does not ask this Court to review any of those rulings.

**B. The Branch's published procedure does not say how it applies to a person who must have leave to file**

17. The Judicial Branch publishes its procedure for requesting accommodation on its website. Each statement quoted in ¶¶ 17-20 from the Branch's website, policy or request form is quoted as the Branch published it on November 10, 2026. The Branch states there: "Completed forms should not be submitted using E-Services, but should be emailed to the Judicial Branch's Centralized ADA Office (CAO) at ADAProgram@jud.ct.gov or given to the Court Clerk or local ADA Contact at the location where the case will be heard." It also states: "Any member of the public may request an accommodation, including those who do not have a court case."

18. The Branch's request form, JD-ES-352 (Rev. 1-26), states: "Requests for accommodations may be made using this form, orally, in any other written format, or as required by the Connecticut Practice Book." It also states: "Please make this request at least 10 days before you need the accommodation for timely processing."

19. The Branch divides accommodations into two kinds. Of the first it states: "Requests for Administrative Accommodations are submitted to and decided by court staff, not a judge."

The second kind, which it calls judicial, includes requests "to participate in a proceeding via videoconference or teleconference." Of these the Branch states: "These requests must be decided by a judge."

20. Before a judge decides a request the Branch calls judicial, the Centralized ADA Office acts on it. The Branch's Policy on Requests for Accommodation Sought Under the Americans with Disabilities Act (ADA) states:

> "Requests for judicial accommodations will first be reviewed by the CAO to ensure that the person making the request is a qualified individual with a disability. If the person is qualified, the request will be sent to a judge for consideration of whether the requested accommodation is directly related to the individual's disability."

The Policy also states: "Requests for judicial accommodations may be made by using the same form that is used for administrative accommodations."

21. None of the published materials described in ¶¶ 17-20 says whether or how the procedure applies to a person who is subject to an order requiring leave of court before filing. None says in terms whether a request submitted to the Centralized ADA Office under the published procedure is a filing in that person's case.

**C. The order of September 16, 2026 requires leave before Mr. Rosenwald files, and does not mention accommodation**

22. On September 16, 2026 the Superior Court entered a memorandum of decision in the dissolution action (Entry No. 421.00). A corrected memorandum was entered the same day (Entry No. 421.01) and a further corrected memorandum on October 15, 2026 (Entry No. 421.02). "The order" means that memorandum of decision as corrected (Entry No. 421.02); every quotation of it in this Complaint is from Entry No. 421.02. The order states: "The court finds that the defendant has violated Practice Book § 1-25 (b)(1) and (2) by way of his filings in this action, and that sanctions are warranted pursuant to Practice Book § 1-25 (b)."

23. Part III.A of the order provides: "The defendant's fax-filing and efiling privileges are suspended until further order of the court." Part III.B provides: "Before the defendant may

file a motion, request, application or notice ('Proposed Filing') in this action, the defendant must first be granted leave to do so."

24. Part III.C provides: "The defendant must request such leave by filing a request for leave to file, as provided for herein, to which the defendant must attach the Proposed Filing." Part III.D provides that the request for leave shall "be subscribed and sworn to before an officer authorized by law to administer an oath," shall "comply with the rules of practice," and shall be in a form the order sets out.

25. Part III.J of the order excepts from the requirement of leave an objection to a filing by the other party, hearing or trial compliance, and appellate filings. Part III of the order does not mention requests for accommodation or the Centralized ADA Office.

**D. Asked how its procedure operates under the order, the Branch answered only as to administrative accommodations**

26. On November 9, 2026, a letter from Mr. Rosenwald putting a written question to the Centralized ADA Office was sent by e-mail, at the address the Judicial Branch publishes for requests for accommodation. It was also sent by certified mail addressed to that office at 90 Washington Street, Hartford. The letter stated: "I write with a question about procedure. I am not making a request for accommodation in this letter." It quoted Part III.B of the order and asked: "Under that order, how am I to submit a request for accommodation concerning that case?" It then put three numbered questions. The first: "Will your office receive a request that I send to it, review it, and, where a judge must decide it, send it to a judge?" The second: "If your office sends a request to a judge, is the request entered on the docket of the case?" The third: "If something more or different is required of me first, what is it?"

27. The letter also stated: "I do not ask your office to review or change any order." On November 10, 2026, an answer came by e-mail from a Judicial Branch employee whose signature gives the title "Court Planner II" and the unit "Project Management, Administration and Legislation," with a copy to the address the Branch publishes for the Centralized ADA

Office (¶ 17) ("the answer of November 10, 2026"). After its greeting and before its signature, the body of the answer reads in full:

> "In response to your e-mail from Monday the 9th, The Centralized ADA Office follows the Judicial Branch's Request for Accommodation Procedure. However, the provisions of a Judge's order, such as [the court's] September 16th order, will always prevail. If you would like to make a request for an administrative accommodation, you may utilize form JD-ES-352 and it will be processed by the Centralized ADA Office as appropriate."

The bracketed words stand in place of a judge's name.

28. The answer of November 10, 2026 does not say to whom a request that a judge must decide is to be presented, or by what steps.

**E. The request of November 17, 2026 was returned on a form that states no ruling**

29. On November 17, 2026, a sworn request for leave and a proposed Request for Reasonable Accommodation: Authorization to Use an SI Assistive Aid with Full Audio and Network Capability (Practice Book § 1-10) were presented for filing at the clerk's office of the Superior Court, Judicial District of Stamford-Norwalk at Stamford, in the dissolution action. In this Complaint those two papers are called "the request for leave" and "the proposed request."

30. The first paragraph of the proposed request states:

> "I ask the Court to authorize, under Practice Book § 1-10 (a), my use in the courtroom, at proceedings in this action, of the SI assistive aid described in paragraph 3, with full audio and network capability and all the functions described in paragraph 4, including transmitting audio, broadcasting audio and recording audio, on the conditions stated in paragraph 5. I also ask for the use described in paragraph 7, outside the courtroom. This is one request. I ask the Court to rule on each item of relief separately and to state the reasons for any item it denies."

The paragraph numbers in that quotation are those of the proposed request. The rule it cites, Practice Book § 1-10 (a), provides in part: "No other electronic devices shall be used in a courtroom unless authorized by a judicial authority or permitted by these rules." Subsection (b) of that rule provides: "The possession and use of electronic devices in court facilities are

subject to policies promulgated by the chief court administrator." The proposed request is directed to the same disability (¶ 15).

31. Paragraph 4 of the proposed request lists the functions of the aid. The first is that it would "transcribe, as they happen, the proceedings on the record, and show the text to me." Among the conditions the proposed request accepts is that "the Court may limit or end the use at any time if it finds the use disruptive." Paragraph 7 of the proposed request asks for use of the aid "in the courthouse outside the courtroom while I am in the building for this action," and states: "To the extent this part is within the Court's authority, I ask the Court to grant it. To the extent it is not, I ask the Court to say so and to name the office that decides it, so that I may present it there."

32. The request for leave is in the form the order sets out, with the proposed request attached as the proposed filing, and it is subscribed and sworn to, as Parts III.C and III.D of the order provide (¶ 24).

33. The clerk's office of the Superior Court at Stamford returned Mr. Rosenwald's request for leave and the proposed request (¶ 29) on Judicial Branch form JD-ES-57, Return of Papers. On the form the block after "To:" and the line after "The enclosed" are blank. The nine printed reasons are struck through, and a mark is placed beside these printed words: "Request for Leave (PB 25-26) and/or Restrictions on Filing. Please use the court form JD-FM-202 every time you file a motion." The form is signed on the line "By (Assistant Clerk)" and dated 11/17/2026. It names no judge, identifies no order by date or entry number, and states no ruling. The marked words do not mention a request for accommodation, the Centralized ADA Office or form JD-ES-352. Nothing on the form says who decides any part of the proposed request. Below the signature line the form prints an "ADA Notice": "The Judicial Branch of the State of Connecticut complies with the Americans with Disabilities Act (ADA). If you need a reasonable accommodation in accordance with the ADA, contact a court clerk or an ADA contact person listed at www.jud.ct.gov/ADA". As of November 18, 2026, the public

register of the dissolution action showed, for November 17, 2026, a line described as "ADMINISTRATIVE DOCUMENT" with no entry number.

34. As of the date of this Complaint, Mr. Rosenwald has received from the Judicial Branch no written record that the proposed request was received as a request for accommodation, no notice that the Centralized ADA Office has reviewed it, and no written decision on any part of it.

**F. Other pending papers, and the rulings of November 18, 2026**

35. On November 17, 2026, a letter asking the Centralized ADA Office for administrative accommodations in other actions was submitted to that office. The letter does not name the dissolution action. It is pending. A complaint of the same date under the Branch's ADA complaint procedure for administrative accommodations, concerning an answer of that office of May 1, 2026, is also pending. On November 18, 2026, in six other civil actions in the Connecticut Superior Court in which no order requires leave of court before filing, that court denied requests by Mr. Rosenwald, made on the Branch's form JD-ES-352, for the courtroom accommodation that the proposed request also asks for (¶ 30), each on a ground printed on that form: "The accommodation is not directly related to the disability." Mr. Rosenwald does not ask this Court to review any of those rulings.

**G. The conferences and the trial ahead**

36. At a hearing in the dissolution action on November 10, 2026, the court set a status conference for December 8, 2026 (Tr. 24:24-25). As of November 18, 2026, the court's schedule for the dissolution action listed a trial management conference on January 22, 2027, and trial on February 4 and 5, 2027. Mr. Rosenwald appears in the dissolution action without counsel. At each of those proceedings he must follow what is said and answer it himself.

## V. CLAIMS

**COUNT ONE — Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(3) and (b)(7)(i) (against the Judicial Branch and the Chief Court Administrator in her official capacity)**

37. Paragraphs 1-36 are incorporated.

38. Mr. Rosenwald is a qualified individual with a disability (¶ 15). He is a party to the dissolution action (¶ 12) and so meets the essential eligibility requirements for taking part in its conferences and trial. 42 U.S.C. § 12131(2). The Branch offers its accommodation procedure to "[a]ny member of the public" (¶ 17).

39. Title II provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The conferences and the trial of the dissolution action are services, programs or activities of a public entity. 28 C.F.R. § 35.102(a); 28 C.F.R. pt. 35, app. B (Title II "applies to anything a public entity does" and "includes activities of the legislative and judicial branches of State and local governments"). The procedure described in ¶¶ 17-21 is the means the Branch has published by which a person with a disability obtains, in such proceedings, the reasonable modifications that 28 C.F.R. § 35.130(b)(7)(i) requires when they are necessary to avoid discrimination on the basis of disability.

40. The need. Mr. Rosenwald appears without counsel. To take part in the conference of December 8, 2026, and in the conference and the trial that follow, he must follow what is said and answer it himself (¶ 36). The proposed request, which is directed to his disability (¶ 30), asks for an aid whose first listed function is to "transcribe, as they happen, the proceedings on the record, and show the text to me" (¶ 31). Whether that aid, or any part of the proposed request, is allowed is for the Superior Court and the Branch to decide. To have that decision before the proceedings it concerns, Mr. Rosenwald needs the Branch to receive the

proposed request and to tell him who decides each part of it.

41. The barrier. The Branch's published procedure does not say whether or how it applies to a qualified individual who must have leave of court before filing (¶ 21). The answer of November 10, 2026 said that the office "follows" the procedure, that "the provisions of a Judge's order ... will always prevail," and that Mr. Rosenwald may use the Branch's form for "a request for an administrative accommodation"; it did not say to whom a request that a judge must decide is to be presented, or by what steps (¶¶ 27-28). On November 17, 2026, the proposed request was presented for filing at the clerk's office (¶ 29), one of the places the published procedure names for submitting a request: "given to the Court Clerk or local ADA Contact at the location where the case will be heard" (¶ 17). The clerk's office returned it on a form whose marked words do not mention a request for accommodation or the Centralized ADA Office, and nothing on the form says who decides any part of the proposed request (¶ 33). Together these are a method of administration. As applied to Mr. Rosenwald, it has the effect of subjecting a qualified individual with a disability to discrimination on the basis of disability, and of defeating or substantially impairing accomplishment of the objectives of the Branch's accommodation procedure with respect to him. 28 C.F.R. § 35.130(b)(3)(i)-(ii).

42. A litigant without a disability has no need of the accommodation procedure, and loses nothing when neither the Branch's published materials (¶ 21) nor the answer of November 10, 2026 (¶ 28) says how the procedure operates, for a person subject to an order requiring leave of court before filing, for a request that a judge must decide. Mr. Rosenwald's disability is therefore a substantial cause of the effect described in ¶ 41.

43. The modification sought is that the Judicial Branch receive the proposed request (¶ 29), to the extent it has not already done so, make a written record of its receipt, have the Centralized ADA Office review it, decide in writing each part of it that court staff decide, and state in writing how each other part of it is to be presented for decision. That modification is reasonable. It is administrative, and it changes no term of any order. The Branch's published

procedure already provides for receiving requests for accommodation, for review by the Centralized ADA Office of those it calls judicial, and for decision by court staff of those it calls administrative (¶¶ 17-20). The Branch has known of Mr. Rosenwald's disability since its own office made the determination described in ¶ 15. The duty to make the modification arises under Title II and its regulation, and not under the Branch's own procedure. The regulation provides: "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i). Mr. Rosenwald does not ask this Court to decide whether any accommodation is to be granted (¶ 5). The modification is a finite administrative task concerning one identified set of papers, and it calls for no particular outcome. The Branch's own office has reviewed a request of Mr. Rosenwald's before: on April 30, 2026, the Centralized ADA Office wrote that his request for accommodation "was forwarded to me in the Centralized ADA Office for review" (¶ 16).

44. The letter and the complaint described in ¶ 35 are pending. The relief sought on this count does not depend on how either is decided, or on the rulings of November 18, 2026 described in ¶ 35. The proceedings described in ¶ 36 are ahead.

45. Each act sought is an act of administration, within the responsibility that Conn. Gen. Stat. § 51-5a(a)(1) places on the Chief Court Administrator (¶ 14). The duties that § 51-9 lists are placed on the staff of her office, "[u]nder the supervision and direction of the Chief Court Administrator" (¶ 14). By statute that staff is to "[s]upervise administrative methods employed in clerks' offices and in the various offices of the Supreme Court, Appellate Court and Superior Court." Conn. Gen. Stat. § 51-9(18). On this count Mr. Rosenwald seeks the relief in prayer (a), (b) and (c).

**COUNT TWO — Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (against the Judicial Branch and the Chief Court Administrator in her official capacity)**

46. Paragraphs 1-45 are incorporated.

47. For purposes of Section 504, "program or activity" means "all of the operations of" a "department, agency, special purpose district, or other instrumentality of a State or of a local government," or of "the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended," "any part of which is extended Federal financial assistance." 29 U.S.C. § 794(b)(1)(A)-(B).

48. The Judicial Branch receives federal financial assistance. The award records published by the United States at USAspending.gov list "JUDICIAL BRANCH, STATE OF CONNECTICUT" as the recipient of grants from the United States Department of Justice under Assistance Listing 16.575, among them one with a period of performance from October 1, 2023 to September 30, 2027 and one with a period of performance from October 1, 2024 to September 30, 2028. The records identify those two awards as 15POVC24GG00617ASSI and 15POVC25GG00289ASSI. The State of Connecticut's Single Audit Report for the fiscal year ended June 30, 2025 reports, of the federal program under Assistance Listing 16.575, that "[t]he Judicial Branch provides grants to subrecipients" (Finding 2025-575, at 255).

49. Conn. Gen. Stat. § 54-203 (a) establishes an office "within the Judicial Department," and § 54-203 (b) (5) gives that office the power "[t]o apply for, receive, allocate, disburse and account for grants of funds made available by the United States." The Single Audit Report prints that office's response to Finding 2025-575 (at 256). On information and belief, that office administers the grants described in ¶ 48. The Judicial Branch's budget submission to the Appropriations Committee of the General Assembly dated February 11, 2025 shows that office, on its organizational chart headed "Superior Court Operations" (at 9), among the units under the Executive Director of Superior Court Operations. The 2025 Annual Report of the Judicial Branch's Advisory Board on the Americans with Disabilities Act

describes "[t]he Centralized ADA Office (CAO) in the Superior Court Operations Division."

50. The operations of the unit of the Judicial Department to which that assistance is extended are a "program or activity" within 29 U.S.C. § 794(b)(1). That unit is the Superior Court Operations Division, which includes both the office described in ¶ 49 and the Centralized ADA Office. *See T.W. v. New York State Board of Law Examiners*, 996 F.3d 87, 94-95 (2d Cir. 2021) (asking which entity receives the federal funding, whether that entity is part of a broader department, and whether the operation sued is an operation of that department). The Centralized ADA Office's receipt and handling of requests for accommodation is an operation of that division. In the alternative, the unit is the Judicial Department: by statute it is one department (¶ 13); the Chief Court Administrator is its "administrative director" (¶ 14); and the staff of the Office of the Chief Court Administrator is to "[s]upervise administrative methods employed in clerks' offices and in the various offices of the Supreme Court, Appellate Court and Superior Court." Conn. Gen. Stat. § 51-9(18).

51. Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). This count rests on the conduct alleged in Count One. For the reasons stated in ¶ 42, the effect described in ¶ 41 falls on Mr. Rosenwald by reason of his disability, and solely by reason of it: a litigant without a disability who is subject to the same order has no need of the procedure and is not burdened when neither the Branch's published materials (¶ 21) nor the answer of November 10, 2026 (¶ 28) says how the procedure operates, for a person subject to such an order, for a request that a judge must decide. By that conduct Defendants have denied Mr. Rosenwald the benefits of, and subjected him to discrimination under, a program or activity receiving Federal financial assistance. On this count Mr. Rosenwald seeks the relief in prayer (a), (b) and (c).

## VI. PRAYER FOR RELIEF

Mr. Rosenwald asks that the Court:

(a) declare that, while Mr. Rosenwald is a party to the dissolution action, Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act require the Judicial Branch and the Chief Court Administrator, in her official capacity, to receive a request for accommodation that Mr. Rosenwald presents concerning the proceedings described in ¶ 36, to make a written record of its receipt, to have the Centralized ADA Office review it, to decide in writing each part of it that court staff decide, and to state in writing how each other part of it is to be presented for decision;

(b) direct the Judicial Branch and the Chief Court Administrator, within fourteen days of the Court's order or of the day on which Mr. Rosenwald presents the proposed request (¶ 29), or a copy of it, at the Centralized ADA Office or at another administrative office that the Branch designates, whichever is later: (1) to receive it there, to the extent they have not already done so, and to give Mr. Rosenwald a written record of the date of its receipt; (2) to have the Centralized ADA Office review the proposed request; (3) to give Mr. Rosenwald a written decision, with the reason, on each part of the proposed request that court staff decide; and (4) to state to Mr. Rosenwald in writing, as to each other part of the proposed request, whether the Branch treats it as one a judge must decide, and to whom and by what steps Mr. Rosenwald is to present it;

(c) direct the Judicial Branch and the Chief Court Administrator to state to Mr. Rosenwald in writing, within fourteen days of the Court's order, how the Branch's published procedure for requesting accommodation (¶¶ 17-20) operates for any later request for accommodation by Mr. Rosenwald concerning the dissolution action, including one that a judge must decide: to whom it is to be presented, whether the Centralized ADA Office first reviews it (¶ 20), and the steps by which it is received,

recorded, reviewed and sent for decision;

(d) set such shorter time under (b) or (c) as the Court finds necessary in view of the proceedings described in ¶ 36;

(e) award costs; and

(f) grant such further relief as is just.

Dated: November 20, 2026

THE PLAINTIFF,

Abraham Rosenwald, self-represented
Mailing address: 2093 Philadelphia Pike #9995, Claymont, DE 19703
Telephone: (203) 391-1041
E-mail: aberosenwald@pm.me